IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN M. HARTWAY,

    Petitioner,                  No. CIV S-09-CV-141 MCE CHS

  vs.

D.K. SISTO,

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner, John M. Hartway, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving an indeterminate sentence of seven years to life following his 1976 jury convictions for first degree murder, robbery, and assault with a deadly weapon. Here, Petitioner does not challenge the constitutionality of his conviction, but rather, the execution of his sentence and, specifically, the 2007 decision of the Board of Parole Hearings (the "Board") finding him unsuitable for parole.

## II. ISSUE PRESENTED

Petitioner sets forth several grounds for relief in his pending petition. Specifically, his claims are as follow, verbatim:

    1)    Petitioner's due process and equal protection rights to a fair

1

        and impartial hearing were violated as the hearing was not held under ISL guidelines, provisions and regulations required under rule of law and hearing should be considered null and void.

2) In unlawfully re-litigating Petitioner's crime per the denial decision the BPH members violated the rule of law by accusing Petitioner for crimes not charged violating both state and federal due process and equal protection under the law.

3) The BPH panel members erred in failing to fix Petitioner's primary term on his ISL proportionate to his offense and culpability as a legal right.

4) The BPH has failed to establish standard criteria for determining the number of years of denial given to Petitioner in violation of state and federal constitutions' rights to due process and equal protection.

5) Penal Code section 3041 creates a liberty interest protected by the federal due process clause that the BPH panel violated ignoring the mandate that it shall normally set a parole date one year prior to Petitioner's minimum eligible release date.

6) BPH based its denial for parole suitability primarily on the circumstances of the crime which will never change rather than the post-conviction conduct of Petitioner thereby barring Petitioner from ever being found suitable.

7) The BPH's denial based on the benign psych [ ] evaluation report does not constitute ample evidentiary evidence to deny Petitioner a parole release date.

8) The role played by the Deputy District Attorney during Petitioner's hearing was excessive and in violation of guidelines and due process.

(Pet. at 72-80). Petitioner's claims will be addressed individually in subsections (V)(A)-(D), with the exception of claims five, six, seven and eight. The allegations in these claims all assert related due process violations in the context of California's statutory parole scheme and thus will be addressed cumulatively in subsection (V)(E). After careful consideration of the record and applicable law, it is recommended that the petition for writ of habeas corpus relief be denied.

### III. FACTUAL BACKGROUND

        The basic facts of Petitioner's commitment offense were summarized in his June

2007 psychological evaluation as follows:

> INMATE UNDERSTANDING OF LIFE CRIME: The inmate was charged with PC § 187, Murder First Degree.
>
> Summary of the Crime: On February 20, 1976, at 4:30 a.m., Oakland Police Department officers responded to a call of a shooting reported by Mr. Steward. As responding officers entered the apartment building, they observed the door of Peter Kentfield's apartment to be slightly open. The officers pushed the door open and found Peter Kentfield bound and gagged on the bed. The victim had been hogtied with his hands and feet bound behind his back and the ropes looped around his neck with a pillowcase over his head. Peter Kentfield was dead at the time of the officer's arrival at the apartment, but the body was still warm. He had been struck in the head, apparently prior to the time he had died. The ca[u]se of death was found to be ligature strangulation. . . . (*Source documents* considered are Probation Officer's Report (POR) dated September 2, 1976, and letter from office of the District Attorney to Adult Probation, dated August 28, 1976.)
>
> Prisoner's Version: Hartway accepts responsibility for the murder and expressed remorse for his actions. Hartway states, "I will accept responsibility for the murder, but details will change nothing, I accept responsibility for the murder.
>
> Multiple Crimes: Robbery First, PC 211, Count three, Alameda County Case Number: 61840 (same as Life crime). Victim: Paul Nielsen, age: 82 years old.
>
> Offense Summary: On February 16, 1976, at approximately 8:30 p.m., hartway attempted to get the Nielse's to let him into their house to use the telephone, on the pretense of calling his girlfriend. Mr. Nielsen refused to allow Hartway in the house and gave him twenty cents to make a phone call. Hartway started to leave and then turned and said, "God Bless you, I can't take anything from you", and came back to the door. Mr. Nielsen did so; Hartway forced open the door and forced his way into the house. When Mr. Nielsen resisted, Hartway stuck him in the face several times and knocked his head into the inner bound door frame, resulting in a wound to the victims's head, which required sutures. Hartway bound and gagged Mr. Nielsen to a kitchen chair. He then took a kitchen knife and took Mrs. Nielsen through the house attempting to locate items of value. Hartway took from between $700-$800 from a cabinet in the kitchen.
>
> Prisoner's Version: Hartway accepts the responsibility for the commission of the crime and declined to make any further statement.

(Pet. Ex. F).

Following a jury trial, Petitioner was found guilty of first degree murder, robbery,

3

and assault with a deadly weapon  Petitioner was sentenced to an indeterminate term of seven years to life imprisonment with the possibility of parole. On July 10, 2007, Petitioner appeared before the Board of Parole Hearings for his tenth subsequent parole consideration hearing. After considering various positive and negative suitability factors, the panel determined that Petitioner would pose an unreasonable risk of danger to society if released, and concluded that he was not suitable for parole. Petitioner sought habeas corpus relief from this decision in the California Supreme Court. That court denied his petition without comment on October 16, 2008. Petitioner filed this federal petition for writ of habeas corpus on January 15, 2009. Respondent filed its answer on August 17, 2009, and Petitioner filed his traverse on September 21, 2009.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V. DISCUSSION

**A. Indeterminate Sentencing Law (Claim One)**

Petitioner claims that the application of California's current parole suitability regulations, promulgated pursuant to California's Determinate Sentencing Act of 1976 ("DSL"), violated his rights to a fair and impartial parole hearing. Petitioner contends that his parole hearing should have been conducted pursuant to the Indeterminate Sentencing Law ("ISL") effective at the time he was sentenced. Thus, it appears Petitioner's argument is that application of the parole suitability regulations effective at the time of his hearing violated the Ex Post Facto Clause of the United States Constitution because they were not effective at the time he was sentenced.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. CONST. ART. I, § 10. *See also Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003). A law violates the Ex Post Facto Clause of the United States Constitution if it punishes as criminal an act that was not criminal when the crime was committed, makes a crime's punishment greater than when the crime was committed, or deprives a person of a defense available at the time the crime was committed. *See Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized . . . that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them."). In this case, Petitioner's claim for habeas corpus relief based on an ex post facto violation is foreclosed because the Ninth Circuit has held that "the application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not disadvantage them, and therefore does not violate the federal constitutional prohibition against ex post facto laws." *Conner v. Estelle*, 981 F.2d 1032, 1034 (9th Cir. 1992). This is because the DSL guidelines require consideration of the same criteria as did the ISL. *Id*. (citing *In re Duarte*, 143 Cal.App. 3d 943, 951 (1983).

5

1    Moreover, the Board's determination that Petitioner was not yet suitable for parole did not alter Petitioner's sentence in any way. As noted above, Petitioner was convicted of first degree murder. CAL. PENAL CODE § 187. Under California law at the time Petitioner was sentenced, this crime carried a penalty of seven years to life imprisonment with the possibility of parole. Cal. Penal Code. § 190 (1976). Petitioner's sentence carries no guaranteed parole date. Rather, it carries the potential that he could serve the entire term of life imprisonment. While Petitioner may have hoped or expected to be released sooner, the maximum duration of his confinement was set at life long before he appared before the Board for his 2007 parole suitability hearing. Thus, the Board's decision to deny him a parole relase date at that time did not enhance or otherwise alter Petitioner's punishment or sentence.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**B. Re-Litigation of Petitioner's Commitment Offense and Uncharged Crimes (Claim Two)**

Petitioner claims that the Board unlawfully re-litigated Petitioner's commitment offense and accused him of uncharged crimes during his 2007 parole hearing, in violation of his rights to due process and equal protection. Petitioner argues that the California Penal Code assigns the power to impose punishment for crimes solely to the courts. Accordingly, the Board improperly usurped the power of the courts by imposing punishment for uncharged offenses. In addition, Petitioner claims the Board violated his rights under section 5011 of the California Penal Code by requiring him to admit guilt for his commitment offense.

First, to the extent that Petitioner's claim rests on an allegation that the Board failed to follow California state law or procedure, it is not cognizable in a federal petition for writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir 1986). As discussed above, a writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). Moreover, that Petitioner cites the federal due process and equal protection clauses does not change this

6

analysis because the mere citation to federal law does not transform a state law claim in to a federal law claim. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).

Next, Petitioner's claim that his rights to equal protection and due process of the law were violated by the Board's decision lacks legal and factual support. Petitioner has not specified how the Board retried his commitment offense, what additional uncharged crimes the Board imposed punishment for, or how his sentence has been altered by the Board's decision. Indeed, as noted above, the maximum punishment for Petitioner's commitment offense was set at life long before his 2007 hearing. In sum, Petitioner has provided no evidence, nor citation to the record to support his claim. Rather, Petitioner has merely alleged that his rights were violated. Conclusory allegations, "[un]supported by a statement of specific facts" or evidentiary support does not warrant federal habeas corpus relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

For the reasons stated above, Petitioner is not entitled to federal habeas corpus relief on this claim.

**C. Failure to Fix a Primary Term on Petitioner's Indeterminate Sentence (Claim Three)**

Petitioner claims that the Board has failed to set a primary term on his indeterminate sentence. According to Petitioner, a primary term on an indeterminate sentence must be set in proportion with his offense and culpability, and does not depend on a finding of parole suitability. In other words, Petitioner claims that the Board is required to set a fixed release date on his indeterminate sentence.

California law provides that where the Board fails to fix a primary term, "the court will deem it to have been fixed at the maximum." by default. *In re Rodrigues*, 14 Cal.3d 639, 654 (1975). *See also In re Bobby Williams*, 53 Cal.3d 169, 182 (1975) (quoting *People v. Wingo*, 14 Cal.3d 169, 182 (1975) (where the Board omits or declines to fix the term of a prisoner serving an indeterminate sentence, the maximum term will be deemed to be the fixed term)), Here, the Board has failed to set a primary term on Petitioner's sentence, thus the statutory maximum punishment, life imprisonment, is by default the fixed maximum term Petitioner must serve.

7

Moreover, California law entitles Petitioner to a base term on his sentence only *after* he is found suitable for parole. *In re Stanworth*, 33 Cal.3d 176, 183 (1982) (holding that under both the indeterminate and determinate sentencing laws, a life prisoner must first be found suitable for parole prior to setting a parole date). Where, as here, the life prisoner has not been found suitable for parole, there is no obligation to set a parole release date. *See generally In re Dannenberg*, 34 Cal.4th 1061, 1070-71 (2005); 15 CAL. CODE REGS. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole"). Because Petitioner was deemed unsuitable for parole, the Board's failure to fix a primary term or release date did not violate Petitioner's federal constitutional rights.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**D. Failure to Establish Criteria for Determining the Length of Deferral for a Subsequent Parole Consideration Hearing (Claim Four)**

Petitioner claims that the Board has failed to establish and publish statutory criteria for determining the specific number of years a subsequent parole consideration hearing may be deferred for a prisoner deemed unsuitable for parole. Consequently, Petitioner alleges that when the Board deemed him unsuitable for parole, it deferred his next subsequent parole consideration hearing for a period of time far greater than many other inmates incarcerated for similar crimes and with worse institutional behavior records. Petitioner does not specify how many years the Board deferred his next parole suitability hearing, nor does he direct the court to the specific cases of any similarly situated inmates whose subsequent parole consideration hearings were deferred for a lesser period of time than his own.

Petitioner's claim fails to state a claim for federal habeas corpus relief because it appears to be based entirely on state law. Once again, mere citation to the due process or equal protection clauses of the United States Constitution does not transform a claim grounded in state law into a federal law claim. *Langford*, 110 F.3d at 1389. As noted above, federal habeas corpus relief does not lie for a violation of state law. *Estelle*, 502 U.S. at 67-68. Petitioner has cited no authority

for the proposition that a state parole board violates an inmate's federal constitutional rights by deferring parole suitability hearings beyond a certain period of time. *Cf. Cal. Dep't. of Corr. v. Morales*, 514 U.S. 499, 501 (1995) (California statute amending parole procedures to allow the Board to decrease the frequency of parole suitability hearings did not violate the Ex Post Facto Clause as applied to a petitioner who was convicted prior to the amendment). Even if the Board lacked authority under state regulations to defer Petitioner's next parole suitability hearing for an unspecified number of years, a violation of state mandated procedures will constitute a due process violation only if the violation brings about a fundamentally unfair result. *Estelle*, 502 U.S. at 65. Under the circumstances of this case, the Board's decision to defer Petitioner's next parole consideration hearing was not fundamentally unfair. Petitioner is thus not entitled to federal habeas corpus relief on due process grounds.

Petitioner has also failed to demonstrate that his right to equal protection was violated by the Board's decision to defer his next parole suitability hearing for an unspecified number of years. Petitioner's claim is insufficient to demonstrate that Petitioner was treated differently from other similarly situated individuals. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." (internal quotations omitted)). Nor does Petitioner claim that he was discriminated against as a result of his membership in a suspect class, such as race. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Petitioner's conclusory allegation that his right to equal protection of the law was violated, "[un]supported by a statement of specific facts [does] not warrant habeas corpus relief." *James*, 24 F.3d at 26.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**E. Due Process in the California Parole Context (Claims Five, Six, Seven and Eight)**

The allegations in Petitioner's fifth, sixth, seventh and eighth claims all assert due

9

1  process violations in the context of California's statutory parole scheme and thus will be addressed
2  cumulatively in this section. Petitioner claims that California state law creates a liberty interest in
3  obtaining a parole release date protected by the federal due process clause. Petitioner also
4  challenges the sufficiency of the evidence cited by the Board as the reasoning behind its
5  determination that Petitioner posed an unreasonable risk of danger to society and was thus unsuitable
6  for parole. Specifically, Petitioner challenges the Board's reliance on the circumstances of his
7  commitment offense,s his psychological evaluations, and the Deputy District Attorney's opposition
8  to his release.

9      The Due Process Clause of the Fourteenth Amendment to the United States
10 Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due
11 process of law. U.S. Const. Amend. XIV, § 2. A person alleging a due process violation must first
12 demonstrate that he or she was deprived of a protected liberty or property interest, and then show
13 that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't*
14 *of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th
15 Cir. 2002).

16      A protected liberty interest may arise from either the Due Process Clause itself or
17 from state laws. *Bd. of Pardons v.. Allen*, 482 U.S. 369, 373 (1987). In the context of parole,

18  > [t]here is no right under the Federal Constitution to be conditionally
    > released before the expiration of a valid sentence, and the States are
19  > under no duty to offer parole to their prisoners. [ ]. When, however,
    > a State creates a liberty interest, the Due Process Clause requires fair
20  > procedures for its vidication – and federal courts will review the
    > application of those constitutionally required procedures.
21
   *Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011). *See also Greenholtz v. Inmates of Neb.*
22
   *Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to
23
   be conditionally released before the expiration of a valid sentence."). Here, because California's
24
   statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole
25
   release will be granted' when or unless certain designated findings are made, thereby giving rise to
26

10

a constitutionally protected liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442 U.S. at 12). *See also Swarthout*, slip op. at 4 ("[T]he Ninth Circuit held that California law creates a liberty interest in parole . . . . While we have no need to review that holding here, it is a reasonable application of our cases." (internal citations omitted)). Thus, Petitioner's contention that he has a federally protected liberty interest in his release on parole is meritorious. However, this alone does not establish Petitioner's entitlement to federal habeas corpus relief.

Despite the existence of this liberty interest, it is well established that inmates are not guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of parole, we have held that the procedures required are minimal."). *See also Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The United States Supreme Court has held that the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to be heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5. *See also Greenholtz*, 442 U.S. at 16.

In addition, as a matter of state constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). However, California's "some evidence" requirement is a substantive right provided by the state of California, and thus is not afforded protection by the federal Due Process Clause. *Swarthout*, slip op. at 5. Indeed, the Supreme Court has held that "[n]o opinion of [theirs] supports converting California's 'some evidence' requirement into a substantive federal requirement." *Id*. Moreover, the Supreme Court has long recognized that alleged violations of state law are not cognizable on federal habeas corpus review. *Id*. at 6; *Estelle*

*v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of the United States Constitution."). Accordingly, on habeas corpus review, it is not within the scope of the federal courts to assess the sufficiency of the evidence relied upon by the Board in support of its determination that an inmate is not suitable for parole.

Here, the record reflects that Petitioner was present at his 2007 parole suitability hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's determination that he was not suitable for parole. The federal due process clause requires no more. To the extent that Petitioner's claim rests on an allegation that the Board failed to follow California state law or procedure because its decision is not supported by sufficient evidence, it is not cognizable in a federal petition for writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). As discussed above, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).

Petitioner received all process he was due at his parole hearing and is thus not entitled to federal habeas corpus relief on his claim that the Board's unsuitability determination violated his federal right to due process of law.

## VI. CONCLUSION

Accordingly, IT IS RECOMMENDED that the pending petition for writ of habeas corpus be denied. These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 1, 2011

*/s/ Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE